We will hear argument first this morning in Case 24-983, Havana Docks v. Royal Caribbean Cruises. Mr. Klinger. Mr. Chief Justice, and may it please the Court. Confiscated property is defined to include property Cuba seized control of. As the Commission observed, Cuban officials physically occupied the dock facilities, making them confiscated property. Stopping trafficking in such facilities locks them up as painted until Cuba pays for what it took. It's a takings remedy. And it stops money flowing to Cuba in the interim. It's an anti-fencing remedy as well. Those are the core statutory objectives. They require an ongoing remedy. Because trafficking is in facilities, not property interests, term limits on interests have no effect on the remedy's duration. Instead, that remedy's duration is set out in the definition of confiscated, and ends when the claim is resolved or democracy comes to Cuba. That's also true if confiscated property is viewed instead as an interest, the control of the docks taken and extinguished in 1960. Title III is at the core of the foreign commerce power. Yet the Eleventh Circuit shrunk Title III by viewing the issue as though no confiscation had occurred. But that gives little or no effect to future contingent life, leasehold, and the many expired interests, including patents. And place is an open-for-business sign on property taken from Americans, all contrary to why Title III was enacted. The cruise lines acted in concert with Cuba, and paid state security forces $130 million to make $1 billion without seeking our authorization. They relied on the suspension of the private right of action, but now would have this case be all about Cuban property law. But the Claims Commission conclusively resolved those issues and gave courts all the guidance needed regarding the claim and confiscated property that issue in Title III cases. I welcome the court's questions. What exactly is property here that has been confiscated? The interests that were taken from us are the equivalent of a leasehold, and comprised the docks, the land, the rights to operate those, the concession, and machinery. Confiscated property, though, in terms of the anti-trafficking provision, is the docks themselves. I thought your claim had to do with the use-of-fruct rights that you had. That's correct. The claim reflects the particular interests that were taken from us. Those include two use-of-fructs, the first of which gave rights over an area that allowed us to construct the works and operate them. That's plenary control. The 11th Circuit indicated the use-of-fruct is for all uses and for all fruits. And the other use-of-fruct was in relation to the areas between streets on the land that was granted later. And that's, again, a plenary commercial control in relation to that. So it seems as though you are treating the use-of-fruct interests that you have almost as an actual ownership of the property itself. I wouldn't say that, no. We're treating it as, essentially, ownership of a leasehold, a set of interests related to the facilities. The facilities themselves are what was seized and are set off limits, but that's the underlying property. We don't own the docks other than in the sense of having held a leasehold interest in relation to those. But you normally don't think of someone as confiscating a lease or a leasehold. That's right. That's exactly our principal argument, is that we don't naturally think of trafficking or confiscating necessarily being the interests. But it's the underlying property that is the subject of the anti-trafficking prohibition. And then the taken interests are reflected in the claim. Counsel, isn't the other answer to Justice Thomas and the concerns about what is the nature of this property taken care of by the statute itself? Because it seems to me that property is a defined term here and that the statute itself includes the kinds of interests that you're talking about, not just real property but also things like the leasehold interest you're describing. Absolutely. The leasehold and any other interests are included in the statutory definition. And I would say that the property definition is so broad that it includes both the underlying things, the res, and the interests themselves. And it has two parts. The first part is, as you say, the real, mixed, and personal property, the things, the underlying things. And then the second part is the interests. And that could be present, future, contingent. And I guess my point is that we have defined terms in this statute that tell us what Congress intended when they said you are trafficking in confiscated property. The words trafficking, confiscated property, all of those things are in the statute. So it's a little confusing how the 11th Circuit got to essentially redefine what it means to be trafficking in confiscated property in light of this statute. That's absolutely true, particularly if we focus on the word confiscated. Confiscated has the effect of indicating that stolen property remains stolen until three things happen. It's the claim, the underlying claim is settled by the international claims process, the property is returned, or particularly adequate compensation is paid. Well, Mr. Grinder, whatever the definition of property is, I mean, you can't sue for property that you're unconnected to, right? You can't just say, you know, the Cuban government seized a piece of property across the street someplace, and I saw it, I didn't have anything to do with it, I think I'll go bring a lawsuit about it. You can't do that. That's absolutely right. So what the statute is saying is that the person can sue for property that has been confiscated from that person, correct? And once you read the statute like that, it seems as though that the property that was confiscated from that person is here not the docks, the docks is the physical thing, but the property that the person had was just an interest in that physical thing. It was, you know, a stick in the bundle, whatever you want to call it, but the property that the person had was a concession. If you view the confiscated property as just the interest, that is something that produces almost the same result. And as you saw in the briefing, we believe that even that model operates to our benefit and requires that the cause of action be upheld. I guess I don't see why that's true. I mean, if you see it that way and the property that you have a right to sue about is the concession, that was the thing that was confiscated from you, I mean, the concession expired. And so you could have sued from 1960 for however long the concession lasted until, but once the concession expired, I mean, you no longer have a property interest. You are just like that bystander that I was telling you about, which is like, you know, there was property that was confiscated all over Cuba, but that doesn't mean that I have a right to be here in court. So if I could go back to... Could you talk just a little bit louder? I'm sorry. Yeah, I'm sorry. Let me take one crack at the seized property as confiscated before moving on to why the remedy continues, even if it's seen as an interest. And that's the nexus that you're looking for is, I think, broader than what you're suggesting, that you need to have a claim in the property, the property which was confiscated, and that is defined more broadly. It's defined as the property that was seized, and it reflects Congress indicating that any facility, the mine, the factory, that if that's what's seized, that that's off-limits from trafficking, that that is the enforcement mechanism for having the takings component enforced, and it stops money flowing from Cuba from the exploitation of that property. The linkage is that once Cuba seizes, say, the docks, that that takes a whole series of interest, and Congress is giving each claimant to that property. I guess I understand that, but it doesn't seem to me to fit with the statutory language very well, because the statutory language does not talk about trafficking in claims. The statutory language talks about trafficking in property, and clearly the property that it's referring to is the property that the person who's suing owned, and your property is not the entire docks. Your property is a concession in the docks that was time-limited. But the statutory language indicates that it ties trafficking to the property which was seized. I'm not arguing that our claim is the basis for trafficking. It's trafficking in the underlying property to which we have a claim, so any number of claimants can enforce the anti-trafficking provision as it applies to the underlying facilities, the dock facilities. However, if you view the plaintiff's interest as the taken property, the remedy is not tied to the duration of that interest. It's like a takings claim. If my leasehold is taken, whether before or after the leasehold ends, I have an ongoing remedy to be paid for, and that's the gist of what Congress is providing here. I guess I wonder why that's true, and this will be my last one. Suppose that the docks were split up physically, so there was a blue half and there was a yellow half, and you only had the concession on the blue half. Then if you came in and said the yellow half is being used and I want compensation for that, tell me if you would disagree, but I think we would all say, no, you can't have that because there's a spatial boundary that applies to your property interest. So, too, here there's a boundary. It's not spatial, so it's not as natural to think about it. It's temporal, but it's still a boundary on your property interest. Once it's over, it's over, and you have nothing to complain about anymore, any more than you would have had anything to complain about if you were arguing about the yellow part of the dock. The commission's determination would let you know what confiscated property was. If you held an interest just in the yellow portion, presumably the commission would have said the confiscated property is the yellow portion, but be that as it may, that even if you are claiming trafficking in the blue portion, that it's still a takings-related remedy. It wouldn't mean that you don't have the ability to pursue your remedy, get a remedy, to be paid for what was taken from you just because there's a time limit on the particular interest. Well, if you put the time limit aside, let's talk about the use limit. So, as I understand it, you had a cargo use-abrupt, right? Your concession was only for cargo and the cruise ships used it for passenger? Am I understanding that correctly? No, we completely disagree with that. We think that we had plenary commercial control as a result of being granted each of the USFRUCs. What an USFRUC is is the equivalent of a leasehold. That's the closest translation. As the 11th Circuit said, it provides for all uses and all... So there was no finding below that your USFRUC was for cargo only? Correct. In fact, Judge Bloom considered the full range of arguments and found that to not be the case. She rejected that cargo limitation. And, in fact, we've charged for passenger ships and cargo ships. And there is no there there to the argument that the other side cannot point to a single instance where we did not exercise complete plenary control over the docks and the land. So what happens? This is a question that's somewhat like Justice Kagan's question about divisibility. Your claim that was certified includes not just the docks but also some office supplies, some office buildings. And I don't know whether those were attached to the docks or not. But in this hypothetical, let's just assume they're farther away and the cruise ships never used them. But they are part of the valuation that you got from the commission. Are they liable for that even if they never touched that property and even if it was at some removed from the docks themselves? They are because that's the property interest that underlies the claim. And the property confiscated was taken when... I'm sorry. And the control over those... What if you had a grocery store too? In the middle of the island, has nothing to do with the docks, but it's also part of your claim. Are they liable for that? The claim sets forth certain value. The trafficking just needs to be in the property that it's taken. That's right from you. As long as it's your property, as long as one portion of it is, that would extend to both... I don't understand that. The way this commission worked, would you have had to go and get separate valuations for different parts of the property? In this hypothetical, I'm giving you the grocery store is completely unrelated to the docks. Cruise ship hasn't touched it. And is the way that it would work that you could get it all valued in one single claim? Because I guess I don't understand why they trafficked in the grocery store in my hypothetical. That is right. The owner of those taken interests would come before the claims commission and say, here are my taken interests, and I want this claim certified. And whether they are near or far, those would be the ones that the commission would pass on. And then the question of trafficking, who is trafficking in those interests, is the sort of later question. But the commission has determined the scope of your property interest. I guess I'm a little confused about the questions related to the limitations on your property interest, because I thought that was what the statute was saying was the purpose of the commission. That when you say, I've had my property interest taken, you go to the commission, and they decide whether or not the extent of your interest is just the blue part of the dock or the yellow part of the dock. The later question becomes, who is trafficking or is someone trafficking in the yellow part or the blue part? And I think you would say, obviously in this situation, when the yellow part is the dock and the cruise line is using it, they've absolutely trafficked in the property interest that the commission has identified and told us we own. Told us we own and indicated it is off limits for trafficking. I mean, the statute says anyone who owns a property interest as certified by the commission can make a claim that someone is trafficking in it and get relief or get the money that is associated with that activity in the statute. So it seems pretty straightforward to me. I'm struggling. I think that's right. There's land and there's the three peers. If the cruise lines only use one of the peers, the fact that the other peers didn't get used doesn't mean that they're off limits from trafficking, and it doesn't mean that the certified claims damage amount doesn't encompass all of those. Your other point, I think, is that the fact that you might have limited property interests in some way, like the property interest that was taken was temporary or whatnot, doesn't impact whether or not you have a claim, and all you need is a claim in order to trigger this kind of cause of action in the statute. That's correct, and that's necessary to get the statute to work, as Congress clearly intended, that if the rent, the takings component of the remedy, which, like any takings remedy, continues until there's actually a payment for the taken property, that if the locking up of the docks doesn't continue until that remedy is provided, CUBA has no incentive to pay. That's the whole point of the statute, and your stolen property is exploited. Thank you, Counsel. Justice Thomas, anything further? On the time question, when the Foreign Claims Settlement Commission calculated the value of what was confiscated from you, did they calculate how much you were likely to have received as a result of your concession during the time period of the concession, or did they calculate how much you would have received if the concession had remained, in effect, up to the time when they made the calculation? If I understand the question correctly, the commission noted that the docks and related rights were to be turned over after an additional 44 years, and that presumably factored into their valuation calculation. It's not entirely clear that that's the case because of the methodologies that they used in terms of book value and the concession and the land. They treated that as having almost a market value at the time. But I can't say that they didn't take into account, because I think they probably did. They treated it as a time-limited leasehold, essentially. As to the extent of the concession, I think you said that the district court found that it applied to passengers as well as cargo. Judge Bloom rejected an argument that there was this cargo limitation. She viewed the commission decision as foreclosing that, but she went further. She allowed the full presentation of argument based on the legal expert. She considered that found to be of no value, and there would be no reason to disregard the commission. Was that factual question or that question of sort of contract interpretation challenged on appeal in the 11th Circuit? Do you regard it as settled, or is it something that would remain open if the case were remanded? The 11th Circuit expressly left that open, and that's open for remand. It did not reach that. If we think of these piers and the property that these piers constitute as a bundle of rights, did the Cuban government from the beginning have what would be the equivalent of a fee simple interest in the pier? Yes, is the short answer. They were like the lessor, and we were like the long-term lessee for the leasehold. So what other rights are there in this bundle of rights? Besides that, the interest that the right that the Cuban government retains, your concession, what else is there? There's the physical property itself, the docks. There's the land. There's the concession. The Cuban government owned the land from the beginning, right, or not? Yes, and they essentially leased it to us, would be our analogy. That's right. We had complete plenary control at the time it was taken, and then our interest was extinguished. And it's that taken interest that is locked into place and continues over time. And now you want to recover a certain amount of money from this one cruise ship line. Were there other cruise ship lines that used these docks during the period, and would you be entitled to receive the same amount from every cruise ship line that used the docks? There were four judgments entered against each of four cruise lines, and if in the future a cruise line used docks that had been set off by Congress as off-limits from traffic without our authorization, yes, they would be violating the law and subject to the very extensive penalties that Congress imposed in relation to anyone who traffics in property without authorization. Okay, last question. Do you think this scheme is primarily a compensatory scheme, or do you think it is at least equally and perhaps even to a greater extent a scheme that is intended to tell people, stay away from Cuba because we want to put maximum pressure on the Cuban government to democratize? I think the latter is the overwhelming impetus. Congress clearly also wanted to give claim holders a remedy because they didn't have one in court, and the international claims settlement process. But this has a punitive component to it, and Congress is presuming or wants this property not to be trafficked because that's what funds the communist regime. That's what continues the regime in power in achieving. Thank you. Justice Sotomayor? I'm not sure I understood your answer to Justice Barrett, but I'm more concerned about your last point because I do think the Due Process Clause would have something to say about a time of any kind of recovery where the most you would have been entitled to was reasonable compensation at the time of the Cuban government taking over, correct? And you can put a three level or you might, it hasn't been decided yet. You were entitled to compensation for the value of what you had at the moment of confiscation, correct? If there's use of the property, I'm sorry. Forget about the property. When it was confiscated, you were entitled to its reasonable value. Yes, if Cuba paid just an adequate amount of compensation, then that would release the claim. You're entitled to interest up until you receive payment, correct? Correct. But what you're seeking is something dramatically different. You're seeking now not one compensation with interest. You're seeking infinite compensation forever. I think that's what might have troubled the court below because it's one thing to say, I am entitled to my value from the Cuban government or from its proxy, the cruise lines, but I don't know what entitles you to ad nauseum compensation for use by everyone forever. Because that's not an interest in that property. You didn't have an interest in that property forever. With respect, the infinity and beyond point is one that is in Cuba's control. It doesn't matter whose control it is. There's a due process problem in thinking that you're entitled to multiple recovery from infinite number of people who might use this dock that far exceeds, by I don't know what proportion, the amount that you were owed. The due process concerns are taken account of by notice. Congress, through the statute and the commission, through defining what confiscated property was, ruled those off limits. Unless there's a substantive problem with that. There might well be. There's a substantive excessive fines problem, excessive punishment problem. I mean, this is something that could be left for another day. I understand that. Because that's not what is before us. What's before us is, did you have an interest in the docks? And the answer is yes, correct? Correct. You're admitting that that interest was time limited, correct? You didn't own the docks. It would have been time limited to 2004 had there been no confiscation. But our time limit on that interest was 1960. It ended there. It ended there, but it wouldn't have gone forever. It went to a defined period of time. So the commission's charge was to value that interest at the moment of confiscation, right? That's completely true. And for takings analysis? For takings, it's what was that interest then? I agree with that. All right. Now, you said to Justice Barrett that you were entitled to this, even if they used a piece of land that wasn't a part of the dock. If it was a store in the middle of the island. Did you say if the cruise line had used that store in the middle of the island and it wasn't a part of the dock, you would be entitled to compensation? Correct. That is what is ruled off limits. That's the seized property that resulted in the The dock was the seized property, not the store. And what did the store have to do with the dock? That's what I'm trying to get to. Well, the store would have been seized as well, and that's where you look to the FCSC's decision. Oh, now you're talking about that the contract, that issue, would have included the store as well? Is that the assumption you're making? If the FCSC had considered and ruled that Cuba's confiscation extended to the grocery store as well and was part of our claim, then yes, just as if there had been It was part of what was seized from you. Correct. And so I'm assuming that our grocery store got seized as well. Because Justice Kagan's question was, if that store had not been part of what was seized, you would not be entitled to compensation. Well, there's two issues. We would be entitled to compensation according to the scope of the damages that forth in the FCSC's claim. There's a separate issue about whether trafficking in that interest would give rise to liability. Thank you. Justice Kagan? Justice Gorsuch? To pick up on Justice Sotomayor's questions, what is the theory you have of why Congress would enact a statute that allows you to obtain compensation from a variety of American businesses, potentially, that vastly exceeds the value of your property? Because Congress had at least dual objectives, and the principal one was to rule off limits from trafficking property that Cuba had seized, or the property interest, however way you wish to think about it, because that was what was fueling or stopping the transition to democracy in Cuba. And that the payment in relation to the taking is only going to happen if Cuba has the incentive to do that. And that's why there's an anti-fencing component, too, that is matched to the taking remedy. But they were recognizing the taking remedy and providing an unusually large disincentive to be trafficking in property. There's no American company right to be violating the embargo and to be dealing in Cuba. There's no countervailing interest. All the companies, wherever they're domiciled, are on notice of what the scope of the property is, and they have actually, if they need to use it or justify it, they can negotiate with the claim holder. They can just seek authorization through a negotiation, or they could just not use it. I mean, those are the choices Congress is presenting to them for extremely important foreign policy reasons. This is the sanctions and claim settlement portions of the Cuban embargo broadly that are at the heart of the commerce power, and the 11th Circuit gave an extremely narrow reading to those foreign policy interests and to the remedy that Congress had provided. On the lawful travel issue that several of the amicus briefs raised, I assume that remains open, even if you prevail here on this issue. Is there anything else you want to say about that at this point? And it's fine if you don't. It does remain open, but I'll just point out that almost all the trafficking took place during the Trump administration, and even during the Obama administration, there was the regulation they rely on, expressly prohibited activities that are primarily tourism. And last thing, anything on the briefing, at least, that you disagree with the Solicitor General on? No, we agree with the Solicitor General's positions, although, of course, we went on to argue at considerable length that even if the property interest is what the confiscated property is, subject to the trafficking prohibition, that we would still prevail, and it's an ongoing remedy rather than one truncated by the 2004 limit that was extinguished and doesn't exist anymore than the benefits we received. Thank you. Just one question, and it's about valuation of the claim. So I know when you have the commission having valued the claim, that's presumptively the value, but let's say that liability is established. The cruise lines come back, and they can establish, they can challenge that right. They can challenge the valuation amount? They can challenge the valuation amount. No, they cannot. I thought they could. Congress made it clear that all determinations of law and fact that the commission determines in the claims process is conclusive and final, not subject to review in any court by mandamus or otherwise. That's Section 1623H. Okay, I thought there was an ability by, you know, some heightened evidentiary standard. Yes, no, what you're referring to is that there are three types of valuation. One is the amount of the claim. Another is if a special master has made a determination or the commission in the course of considering a claim that's not certified. And then the third is a fair market valuation, but it's the higher of any of those. So that's really only a plaintiff's right to secure... So the defendant has no rights in that. And, I mean, I'll tell you where I'm going with this. I mean, it's just kind of unbelievable to me that in the grocery store hypothetical that if you have these disparate interests all over the island and your claim, you know, and that was the property taken, that someone who uses the docks is going to be liable for the value of the grocery store and let's say you also have gas stations, let's say you have lots of things because you just happen to be someone with wide-ranging property interests. You're saying there's no way for the defendant to get out from under that huge liability, which is just because of the chance that you happen to have wide-ranging interests on the island. It could just as easily have been docks and somebody who owned nothing but the docks. That's right, but the chance they have to get out from under that liability is to not traffic in confiscated property deemed off-limits at all or without our authorization. Okay, thank you. Justice Jackson? To follow up on your response to Justice Barrett, the chance they have to say we're not trafficking as the statute defines it in those particular property interests. So it's fine. The person might have a grocery store and a set of other interests and this is the cruise line and they're only using the docks. The cruise line's response is we're not trafficking in the grocery store per the statute and someone like us would say you're right. But here the cruise lines are trafficking in the sense there's a definition of traffic, sells, transfers, distributes, dispenses, uses, whatever. So the argument I think is that the cruise lines are trafficking in the ownership of the property at issue here as determined by the FCSC, which is the ownership of the dock interest. Is that right? Our claim relates to the docks themselves, the confiscated property. But you own the claim to because the FCSC said you're the owner of the use of the docks. That's exactly right. And the point that you're making about the trafficking definition more broadly, I was using shorthand in talking about authorization. But the trafficking definition excludes from liability or from trafficking any use of property when the person undertaking the actions that are otherwise prohibited secures the authorization of the former owner. Thank you. Thank you, Counsel. Ms. Brown. Thank you, Mr. Chief Justice, and may it please the Court. In 1960, the Cuban government seized the docks that Petitioner built without paying a penny. When respondents then paid the Cuban government around $130 million to use those same docks, respondents trafficked in property which was confiscated. And Congress gave Petitioner the right to seek damages from respondents because Petitioner owns the certified claim to the docks. Petitioner's suit can proceed regardless of whether you think of the relevant property as the physical docks or as the right to 44 years of possession, control, and operation of the docks. Either way, respondents were complicit in Cuba's exploitation of property before Cuba either provided compensation or returned the property to Petitioner. The Court of Appeals rejected that analysis by considering the confiscated property as if there had been no expropriation and then asking whether Petitioner would have had an interest in the property at the time of the trafficking. That test undermines the scheme that Congress enacted, which expressly protects time-limited interests and which is aimed at providing a remedy for Cuba's expropriations, not pretending they never happened. I welcome the Court's questions. Who owns the docks? So at all times relevant here, the Cuban government had the underlying ownership of the docks, but they had provided for control of the docks and possession of the docks to go to Petitioner for the term of the use of the docks. So how could Cuba confiscate docks that it owned? The statutory definition of confiscated refers to seizure of ownership or control of the property. And so while the Cuban government owned the property at this time, they did not have control of the property. That's why in order to effectuate the expropriation here, they had to send government agents, armed soldiers, out to the property to take back control of the physical docks from Petitioner. We think that qualifies as a seizure of control under the statutory definitions here. You could imagine this like a car lease, for example. So say I have a lease of a car for a term of two years from a dealership. The dealership decides that year, after one year, that it wants to take the car back. I think it's perfectly natural to say that they seized the car, even though they had the underlying ownership of the car at all times. Do you agree with Petitioner's position on the grocery store hypothetical? No, we don't. We don't think that you have to just take the certified claim and every interest that's reflected in the claim as given. I think the Claims Commission does lay out, as Justice Barrett noted, that there are facilities here, there are office space, there's equipment. Each of those is valued separately, and so you have to be trafficking in whatever interest or in whatever property is at issue, and you don't get to just kind of bundle everything together necessarily just because of the way that the claim was set out or the way that it was certified. So we're not looking to the Commission's understanding of what the claim is, and we're just focusing on what it means to traffic in the property which was confiscated. Again, I would think the property which was confiscated is the property which was confiscated from you, the plaintiff, and that's a time-limited concession. And the time, it's gone. It's gone by now. It doesn't exist. So I do think that it is relevant that the property which was confiscated doesn't say that it has to be the property which was confiscated from you. It's the property which was confiscated to which you hold the claim, and we know that the claim reflects an interest in the property. I agree with that. I mean, you could have easily written a statute which said, you know, the property in which you hold an interest, and that would have directed everybody to say, okay, they're not talking about the property interest that you own. They're talking about sort of like the underlying piece of land in which you have some more limited interest, but that's not the way the statute is written. The statute is not the property in which you have an interest. The statute is the property that's confiscated. It has to be the property that's confiscated from you, and that's like not the docs. It's just the time-limited interest. So I do think that a claim reflects the interest, right, and the confiscated property can be confiscated even if you didn't have the ownership of it, so I think putting those two things together, you can get to where I was suggesting, which is that you have to own the interest in the property which was confiscated, but even if you disagree with me, I do think that we get to the same place, and that's because you look at the property which was confiscated at the time of the confiscation, so that is the 44 years of the rights to possess and control and operate the docs. Those 44 years don't continue to run because they disappeared at the date of the expropriation. It's like Cuba here is cutting in line in front of Petitioner and exercising the rights that Petitioner was supposed to be able to exercise for another 44 years, and respondents are complicit in that by paying the Cuban government for the exercise of those rights. But if that's true, I do think that the 11th Circuit is right that you're converting a time-limited interest into a perpetual interest because of the seizure. Nobody is defending the seizure here, but the question is what does this compensation scheme entitle you to as a result of that seizure, and you didn't have a perpetual interest, and now you're saying because of the seizure, because your interest was interrupted, we're going to treat you as if you did. I don't think that's right. I think at the time of the confiscation, the 44-year interest is distilled into a claim, and that claim entitles you to recover for those 44 years or to get those 44 years back, and until you either get the compensation for the 44 years or you get 44 years returned, you do have the right to sue anybody who interferes with that. And Cuba and respondents are acting in concert to interfere with the right for those 44 years. Mr. Brown, I understand your point that the interest isn't the docs. It's the use of those docs for 44 years that are reduced to a claim in value. Mr. Klinger suggested, though, that I can recover that amount over and over and over again. You've handled the grocery store hypothetical. How about that one? So before the Court of Appeals, the respondents here have argued that the statute should be read to incorporate a single recovery kind of rule so that petitioners here could only receive the value of their claim a single time. That argument is still open on remand. Judge Brasher, in his dissent, appeared to adopt the argument, although he didn't explain any of the basis for that. So that is an argument that you don't need to resolve today, but to the extent that I think there's a multiple recovery possibility here, I don't think that that should dissuade you from reversing in this case because that does reflect that this is not a purely compensatory regime. It's a foreign policy tool that Congress is using in order to deter trafficking and to impose harsh economic pressure on the Cuban government. So let me see if I've got it right. I don't have to touch it, for which I'm truly grateful. Correct. But the government does believe it allows multiple recoveries. We haven't taken a position expressly in the briefing on this, but to the extent that that's a possibility, I do think that that's just reflective of the foreign policy. The significant foreign policy interests here. Got it. Do you have a position? You said the briefing doesn't expressly take a position. Does the government have a position? It would be odd if the government didn't have a position on such a significant foreign policy. So we do think that the foreign policy interests here do suggest that Congress wasn't particularly concerned with multiple recoveries in this instance, and I think that that is because if you look at the congressional findings as to foreign policy in Section 6081, in particular, Paragraph 6 and Paragraph 11, this is 10A and 11A of the appendix to our brief, Congress sets out that trafficking and confiscated property provides the Cuban government with badly needed financial benefits, including hard currency, and that that provision of those resources undermines the foreign policy that's encompassed within the economic embargo, that pressure that we're trying to apply to the Cuban government in order to persuade it to return to democratic regimes. And I think that allowing for somebody, the fact that some companies have paid off the claim to mean that then they can continue business with Cuba and continue paying Cuba millions of dollars, that really undermines that foreign policy interest. This isn't supposed to be a cost of doing business for companies. It's supposed to be a poison pill that essentially deters them from ever operating with Cuba, at least with respect to the confiscated property, unless and until the Cuban government returns that property, provides compensation for that property, or otherwise returns to democracy. Could we also glean from the enactment history here what Congress was really trying to do? And that is not necessarily set up a compensation scheme, as has been said, but the fact that the Cuban Claims Act, which initially created the Foreign Claims Settlement Commission in 1964, just a few years after all this property was taken, but didn't give a remedy, suggests to me what Congress was doing was really freezing and trying to highlight the fact that this property is taken, that it has a lot of value, and we're going to set up a system to prevent Cuba from trafficking in it. It did not at that time, sort of the initial thrust of this, focus on how much anybody was going to get or the people whose property had been stolen, what is the avenue for recovery. That wasn't the focus. It was to try to keep Cuba from trafficking in this property. I think that's exactly right. That's reflected specifically in Section 6081 in Paragraph 11. Congress notes there that there is no existing judicial remedy for the victims of these confiscations and that it wanted to provide such a remedy in the federal courts of the United States. And then when the remedy comes along, I mean, it may seem pretty draconian to suddenly give multiple recoveries to all these people, but if you think of it in light of Congress's intention to really, really make it hard for Cuba to traffic in these properties, that kind of a sanction makes at least some sense. Yes, that's exactly right. This was intended to be a huge deterrent. It wasn't intended to be something that people actually ended up paying because it was supposed to make them think twice about ever getting involved in these kinds of transactions at all. Thank you. Thank you, counsel. Justice Thomas? How far can... Is there any limit to how far Congress can go with this sort of poison pill remedy? As Justice Sotomayor mentioned, there are some due process concerns, I suppose, that could be raised to the extent that the recovery so far outweighs something else. I think that nobody would kind of bat an eye at this if the recovery was just going to the Treasury instead of going to petitioners. Respondents here have raised due process concerns. As to the remedy as well, that is another issue that will be open on remand to the extent that the Court has further concerns with that there. Justice Alito? When the Commission was calculating the amount due, was it supposed to calculate how much a petitioner would have received during the 44-year period or a longer period, or what does the statute say about that, or does it say nothing about it and leave it to the Commission? It says that the Commission is supposed to understand or figure out what the property interest here was and then value that in the way that's the most equitable, undertaking considerations of fair market value, book value, replacement value, things like that. I think you can see from the Commission decision that they were very well aware that this was a 44-year time-limited interest and that there's every indication that that was taken into account in the way that they were valuing it. Senator New York? I'm not sure you're answering the question. Your answer earlier made it seem as if it wasn't 44 years. It was infinite until the Cuban government gave the property back 44 years. So how could the Commission value it on 44 years when by your claim it's infinite? Until Cubax. The claim continues to exist and the claim continues to be able to be enforced until then, but the value of the interest  When I think of claim, I think of like a lien. And I thought that analogy in one of the briefs was very useful. I lend someone money. Sometimes I lend it for purposes of that property, but often I lend it for the person to use it on something else. But I take a lien on property. That means that that lien exists until somebody pays it off. And if someone buys that property and knowing the lien exists, they have to pay me, even if they may have given the full value to the owner. And that's what I think this law is like, correct? I think that that's a helpful analogy, yes. We think that the property interest is reduced to the claim. So what the Commission did was value that lien, correct? Yes, they valued the 44 years. All right. When I read the law or the snippets of it that were given to me, it seemed to say that the respondent could challenge that the value was presumptive that the Commission gave, but that they could fight it if it was not right, correct? So I don't think that that's correct. The way that I read that is that the presumption is that the Claims Commission's valuation is going to be the amount that you recover. You can't challenge what their valuation was, but you can challenge whether that is the right amount to recover or whether you should instead recover fair market value. Yes, exactly. So that still opens. The other side said no. To the extent that that's what my friend said, I think that that's incorrect. But I do think that you would have to show that the fair market value is the greater of the amounts because the recovery is for the greater of the claims certified amount, the other amount that the special master determines, which isn't relevant here, for the fair market value. But if you can show that the fair market value is greater and is the appropriate amount to be applied in this situation, then that's what's going to apply. I see. So he's right. Okay. That's what I need to know. Justice Kagan? Oh, I'm sorry. No. Justice Kagan? Justice Gorsuch? Justice Gavril? Do you want to say anything on lawful travel? In particular, you know, the story on the other side in the amicus briefs is that they did this at the encouragement of the United States government and that they consulted with the United States government who told them they were good to go, I'm paraphrasing. Yeah. And they said that's lawful travel and I noticed in your brief you don't take a position on that. Do you have a position on the lawful travel in this case? So the government has not made a determination in this case as to whether the particular activities here constituted lawful travel, whether they were within, I think, the general license that respondents were purporting to operate under. We have in other cases... They were told that previously, weren't they, by the government? They say that they were. Again, we haven't made any kind of determination that that is correct to the extent that respondents received assurances from appropriate government officials that what they were doing was lawful and authorized. We do think that that would raise due process concerns. To the extent that the 11th Circuit wants the... Like huge ones, wouldn't you? To the extent that the 11th Circuit wants the government's position and determination on those issues, the 11th Circuit has in prior cases involving lawful travel asked for the United States' views on those kinds of questions and we would be happy to provide them at that point. We haven't provided them here simply because it's not a part of the question presented. Thank you. Justice Barrett? So you agree that would be open on remands? Yes, definitely. Okay. And then just one question. Let's say that I agree with you about the time question and I think it has to be gauged at the time of the confiscation. I just want to go back to that use question I raised before. So there's this dispute about whether it was cargo only or if it was passengers too. I mean, the statute repeatedly talks about the property, the property that was taken and I took you to agree with that insofar as you distanced yourself from your friend's answer to the grocery store hypothetical. If it turns out on, let's say it's open on remand, on remand that really it was just cargo, then does that mean that the cruise lines did not traffic in the property if they didn't use it for cargo purposes? So, not necessarily. I do think it depends on, first, what you think of the property as is because if the property here is the docks and they had an interest in the docks and someone trafficked in the docks then their interest would reflect that their interest was limited just to cargo uses and not to passenger uses and that would be connected to the valuation but it would still qualify. But I also, I think the cargo versus passenger thing here is kind of a red herring because even respondents have acknowledged that if petitioners had the exclusive control of this particular piece of property, if someone used it for a different purpose than they did, that would still be infringing I think on their right to use. This is the hypothetical with like the building where one floor, where you lease it out and there's a use restriction and it can only be used for office space and then someone comes and uses it for a restaurant. Everyone agrees, I think, that that's still trafficking and confiscated property. So the real question here is whether this was an exclusive right to the docks or a non-exclusive right and on that we see nothing in the record that would indicate that it was non-exclusive. Certainly, the Court of Appeals didn't take that position otherwise there would have been no need to remand for further consideration of the trafficking that had occurred before 2004 if this was a completely non-exclusive interest that could have allowed for others to use it. Isn't it the case that part of the value is that they had invested in building the docks so it's not just like the car lease where I was going to have to keep paying monthly and then you take the car and then what are, you know, what have you really lost but here it was like their consideration was that they kept, they had a lot of money invested that they never got back because Cuba confiscated it. That's exactly right. They built the docks. The payment for the docks was supposed to be the right to operate and commercially benefit from them. Ms. Jackson. Let me just get you to quickly explain the role of the certified claim in your analysis. I'm concerned that we might be led to reason from first principles about property law in general when really the certified claim process which is in the statute is doing very important work. I certainly agree with that. The certified claim is going to set out what the property interest was under the appropriate law which I assume would be taking into account the Cuban law that defined the scope of the property interest. They looked at all the record documents that explained the extent of what the use of rough tier was, the extent of the concession, the time limits remaining on that and then they valued that based on the remaining life of the concession and what value was supposed to be able to come out of that. And what they gave as a claim as I understand it never said this terminates or evaporates or something happens to it in the same way that the property interest would have expired. Yes, that's exactly right. It doesn't have any sort of termination provision in it. They were just valuing what the underlying property interest is and giving them a claim. And then the statute here says if you have a claim you get to make this kind of you have this kind of cause of action, right? That's correct. The claim essentially encumbers the property as the lien analogy goes and that property is treated as tainted. Anyone who transacts with engages with benefits from that property is then trafficking in that property and the claim holder has the right to pursue that. Thank you. Thank you, Counsel. Mr. Clement. Mr. Chief Justice and may it please the Court. Title III of the Helms-Burton Act provides an action against someone who traffics in property which was confiscated from the Cuban government. Property is a defined term in the statute that includes any property interest including      a time-limited one like a leasehold. And then the Act gives a cause of action to someone who has the claim to such property i.e. the property that was confiscated. The plain text of the statute requires a one-to-one correspondence between what was confiscated, the property interest that was confiscated and the property interest that was trafficked. So if all that was confiscated was the mining interest in a property, only somebody who traffics in the mining interest not somebody who harvests timber on the property is trafficking in the property interest that was confiscated. The same principles apply to time limits on the property. So if someone had a 50-year leasehold in the property, anyone who traffics during the leasehold traffics in confiscated property. But someone who arrives after the leasehold has run might be subject to a claim by the landlord but not to the leaseholder. And basic principles of property law reflect those same distinctions. Tahoe Sierra says that both the spatial and the temporal limits define the meets and bounds of the property interests. And so with respect to what's at issue here, I think it's clear, as suggested in the response to Justice Kagan's  that with respect to the spatial limits, this is obvious. If somebody traffics in your neighbor's property, you don't have a trafficking claim against them. But the same things apply temporally. And here it should be common ground that the only interest that Petitioner had in these docks was a concession that expired in 2004. Someone who arrives later is not in a position to traffic in the property interest that was confiscated. There's not the one-to-one correspondence the statute requires. I welcome the Court's questions. If I had a lease in property, if I leased property, and how would that lease be confiscated? So the lease would be confiscated in the sense that I assume that what would happen is that the Cuban authorities would come in and take control over the facilities and then in the process you would say they confiscated the lease. That's the way it works in domestic takings law. There is such a thing as a taking of a lease, but the value of  reflects its time limit. And what we don't have in domestic takings law is this idea that under certain limited circumstances there is a substitute payer that pays the person who had their property taken in lieu of the government. And that's the unusual regime that Helms-Burton creates. But the only person who is in a position to be that  payer is the person who traffics in the very property interest that was confiscated by the Cuban government. If there's a mismatch... But the statute doesn't say property interest. It says traffics in property, which was confiscated. You would more naturally think that it was speaking to property that was the basis of the lease. Here's the problem with that, Justice Thomas. Property is a defined term in the statute. So when you read property, you go to the definition and it says any interest in the  including leaseholds, including future interests. So we're clearly talking about sticks in the  And that makes sense. If any stick in the bundle is confiscated, then it makes sense that you get compensation. And under this unusual regime, where you put somebody as a substitute payer, it makes sense that you put the substitute payer in that position only if they traffic in the stick in the bundle that was confiscated. So it's the example I used with mineral rights. And that's a real-world example. Some people, their only interest in property that  over by the Cuban government was a  interest. What would be the interest if you owned it? Then it's easy. You own the whole thing. And then you do have the perpetual ability to go after people who later traffic on the property. But as the 11th Circuit held here, if you ignore the time limits on concessions or leaseholds, you end up treating relatively small sticks in the bundle as if they're the whole kit and caboodle. And that doesn't make any sense. And it really doesn't make sense particularly if you understand that nothing about our position makes the confiscation end or makes the claim against the Cuban government go away. But it also seems quite difficult to pinpoint the particular interest in property. It could be a very small interest. I could lease a closet in a huge facility and somehow I would have to pinpoint that. Well, in theory, it could be difficult. In practice, what you principally see if you look at the claims is you do have some leaseholds but only a  This whole case is about the government in their brief at page 29 identifies a grand total of five time years. If you went and looked at the claims commission order, you would see that it ends in 2004. So there are ones where you would have very clear notice. I do want to talk about Justice Barrett's hypo because it's not a hypo. If you look at the claim here, it didn't just cover the docs. It also covered a thousand shares of Cuban telephone stock and it also covered about $300,000 in repudiated debts. Now, the district court awarded them the whole 9 million even though there's no question that we didn't traffic in Cuban telephone stock and there's no question that we didn't traffic in the confiscated debts. And the confiscated debts are important for another reason because I don't think it's actually possible to traffic in confiscated debts. Yet that is probably the single most recurring claim that's reflected in the claim commission's  Because what happened is not only when Cuba owed money to U.S. companies that were expropriated, all of that's part of the confiscated property.  following you but I struggle just a little bit.  docks were confiscated. The petitioner's time-limited interest in the docks were  I can't agree to that with all due respect because Cuba owned the docks. So the only thing that was true was that they had a right to control the docks. That is directly contrary to the position that we took in the district court and that we appealed to the 11th circuit. Our position is they had no control of the docks, they just had a non-exclusive cargo concession. There's a disagreement over exclusivity.  understand that. But for purposes of this question let's put that aside. There is confiscation of a property interest in the docks. How about that? Can we agree on that? We're together. Okay. And there's no question that your client has used the  We have confiscation  we have trafficking. What's missing? What's missing is the overlap between the property interest that was confiscated and the property interest that was  So the property interest that was confiscated was a time-limited interest Where do you get that from? Traffics in property which was confiscated. Any property of any kind in which was confiscated Right. But then you keep reading and when you keep reading I do too. And if you keep reading it says that you shall be liable to any United States national who owns the claim to such property. And the such property is plainly referring back to the property which was confiscated. QED, with all due respect, this statute requires a one-to-one correspondence between what was confiscated and what was trafficked in. And that makes sense. I think I follow all of that except for the QED. I thought that might be your response, Your Honor, but I really do think that if you look at  statute it refers to property which was confiscated. And so that kind of goes back to Justice Gorsuch's point. Because such property refers back to property that doesn't have an article in front of it. It doesn't say the property that was confiscated. It says property that was confiscated, making it seem broader. No, I don't think so. Because, again, property is a defined term in the statute. And so property includes any property interest that you have in the property. No, but it doesn't say that though. It says any property and then when it gives the long list of kinds of property, I read that definition to say essentially any kind of property. So it can be intangible, it can be a  it can be a leasehold, et cetera. But it doesn't say a couple of times you put an interest before it, any interest in property, but it doesn't say any interest in property, it says any property. So with respect, it says any property and then it talks about specific limited interests in property. And so I'm reading it, I don't think it's a leap to say that it's being inclusive and it's saying any interest in the property. And then it says that the person with the claim to such property gets to bring the action. And that's important because otherwise you can certainly have a situation where different people have different property interests in the same property, the same physical location, and you don't want to let one of them bring a claim for the other person's claim in the property. And the statute would kind of be chaotic if you did that because it allows you to traffic if you have authorization. Well, presumably you need to get authorization from the person who has the exact interest in the property that you plan to traffic in. And similarly, there's a provision in statute A-5-D that's worth a look because that provision suggests that basically once somebody brings one of these actions it's exclusive to anybody else bringing an action in the property. Now, again, if property means a specific slice of the bundle, a specific stick in the bundle, statute works great. If I have a leasehold and somebody brings    I think the statute also works great if we understand that it has a provision that gives some authority to the FCSC to tell us what the person's property interest is. It seems to me that your analysis has at least I counted two problems but that's really the main one in that you're trying to get us to evaluate what the person's  interest is when the statute gives that responsibility to that agency. That is, in fact, all that agency is supposed to be doing is listening to the  that you're talking about and deciding what this company's property interest is. And once they've decided that, they said you have a claim to enforce the interest as we've defined it. And the statute then appears to say anybody who has a claim can come in and try to recover in this way. And the other thing that I think is missing from your analysis is that nothing about the property interest was temporary or limited or anything like that. And that's the way you seem to want us to read it. You cut out the  in the analysis and you say but they only had a  property interest that expired before we arrived and so they don't get to press their claim. There's nothing in the statute that says the claim should be evaluated based on what the property interest was. The FCFC does that. They tell us this person has a  they evaluate all of the limitations and then the statute operates perfectly.  respect, we're not fighting what the commission certified. What the  certified was a time limited interest. It's even more obvious if you look at page 256 of the joint appendix where they say that the whole claim to ownership and control of the docks is on the basis of a concession. But what they don't say is that the claim that we are certifying today has the same limitations as the limited property interest that we are evaluating. That's the thing you're  I think, in order to make your argument work. I don't think so with respect. If the claims commission looked at this thing, I forget whether it was the blue or the yellow, but if the claims commission said you got the blues, that's great. If you traffic in the  blues, I understood you to be  in the  What happens for the spatial limits of the property interest have to apply to the temporal interest in the  If you traffic in year 45, you have a trafficking claim against the person who owns the first leasehold. But if you traffic in year 55, you have a claim against the person who owns the second leasehold has the claim against you. But the first one doesn't. And keep in mind, there's nothing terrible about that. This statute,  didn't think it was giving a claim to everybody who had a claim that could be asserted in court to anybody who had property confiscated by the Cuban government. But isn't what Congress said this as applied to this case? Havana docks had a concession for 44 more years, and that had a value, and the Cuban government has not used that    nobody is to use that concession in the future. Nobody is to use the property interest that was the subject of that concession in the future until there's compensation from the  government. So, you know, you go into this with your record          thinking of docking our cruise ships and, you know, what's the Helms-Burton Act going to mean for us? I mean, a lawyer like you would say, whoa, you're taking a big risk. Well, I would say, yeah, it's a close question. We might end up in the Supreme Court of the United States. But I would say, I'll tell you what my best... I would bet you would not, you know, you would not advise them full speed ahead and we'll litigate this in the Supreme  Court. I would tell them there might be reasons to be cautious, but my best reading of the statute is you don't have anything to worry about after 2005. And the reason I say that is because first of all, the statutory text specifically says that you have to traffic in the property  the interest that was compensated. Obviously I pieced together some pieces of the statute, but I think that is the best reading, that you need the one-to-one correspondence. And then I would say, look, I pulled the claim, and when I pulled the claim, I saw that the only basis for a claim to be  on the basis of  concession. And then I keep paging through, and it says that expires in 2004. So I would say, look, there is a lot of money under the statute. So you may get sued, but if you want my best answer, my best answer is you are in the clear after 2005. And like I said, that doesn't really distinguish it from a whole bunch of other property that Cuba confiscated. From the Sabatino case, they confiscated sugar. It's a perishable good. The sugar that was confiscated in 1960 is not available for  anymore. That doesn't mean that the people in Sabatino don't have a claim against the Cuban government. It just means that in the nature of certain property interests, there will either be very little sort of window for trafficking in that same property interest, or there will be none at all. If your reading of this statute is correct, it's argued it would make hash of the coverage of  And that does seem to me to be correct. Why is it not? Well, it's not for two reasons. One is because the universe of confiscations didn't stop in 1960, so as at least a theoretical matter, and that's what you should be looking at if you're worried about deeming terms superfluous in a statute, you could confiscate patents going forward. But the second reason is not As a theoretical matter,  included patents because it thought that even though all the patents that had been issued to Americans in Cuba before the Cuban revolution had expired after 17 years, somebody here might go to Cuba after the enactment of the Helms-Burton Act and get a patent on something under Cuban law, and then the Cuban government might subsequently confiscate that patent. That's why Congress included patents in the statute. So I think, in fairness, I think Congress included patents in the statute because it wanted to be comprehensive of all interests in property. But I don't think it's a far-fetched hypothetical to say that somebody might have, like, illegally left Cuba from the Cuban government standpoint, had a patent, and that patent was canceled, and that might be something that they could bring into action to. The other thing I will say is that the government looked through all these claims, and they found, even in 1960, they found only two claims that involved patents. And I do think this does underscore the point that Justice Barrett alluded to, which is, it just can't be right that if you traffic in anything that's illegal,    So IT&T was one of the largest confiscees, if you will, and the total amount of their claim is $500 million. The value of the patents that were confiscated is $7,000. First of all, I think the reason we're right about patents is because I think it's weird to think that     entitled to the full $500 million in the claim, or if they are, I'm going to stop doing what I'm doing and move on to something else, because that is an unbelievable windfall. So it has to be that it's not the claim, the claim, the claim. It's the property interest, the property interest, the property interest. And you need to have that one-to-one correspondence between that which was confiscated and that which you trafficked in. If you don't have that, it doesn't mean the claim goes away, it doesn't mean the property is not confiscated. It just means that the particular person who arrived at a neighbor's property or arrived at the docks five years too late, they are somebody who is not going to be put in the extraordinary position of being the substitute payer of just compensation for the  government. Why not putting aside the multiple recovery issue, which I agree with you, gives rise for concern. Putting that aside,  pay for someone who owned the use of the docks before? Now, whether it was exclusive or not, your cruise line, you know that the commission has said that they had a lease interest that was at least for unloading cargo, I'll concede that. Why aren't you viable? Because that's not the statute that Congress wrote. If I disagree with your construction of the statute, if I see that all you have to have is a claim in confiscated property, and the lease is a claim on the docks, whether you want it to be a claim on the docks or not, it is, because the lease is of the  I just can't find that in the statute. If I found either of those words in this statute, I might think they had a pretty good point.  property as  It might include leans, but it doesn't make the claims leans. It doesn't make a claim commission claim a lean on the property. It doesn't make it an encumbrance on the  property. It doesn't do all of those things. Leans are interesting creatures. They don't require you to have any real interest in the property. I don't have to have any interest in the property. If Congress wanted to come up with a lean regime, it would have written a different statute. I would      Part of the argument is it feels unjust, putting aside the statutory language. It feels unjust because the multiple recovery possibility and because this was a time limited interest. The time limited nature is accounted for in the valuation. I don't see what's wrong with the description of  if something is taken at the time, it becomes kryptonite. Nobody can touch it. It wasn't just the  They were never compensated for the property. It seems like the property is the use of the docks. I don't understand why that's crazy. It's wrong because it needs to be the particular property interest that was confiscated. Let's take the hypo with the mineral rights and timber rights. If somebody goes there and all that was confiscated was the mineral rights and some company goes there and takes all the timber and lumber away, I wouldn't think they trafficked in the confiscated property. I don't know why it's different from the time limits. To the extent the government is suggesting this suspension or tolling rationale, there's two things wrong with that. One is my friends on the other side expressly disclaim suspension or  The other thing is it's wrong as a factual matter because we know from this particular concession where from 1906 to 1910 the Cuban government had a spat with the Cuban       which is the maximum by the way the Cuban law allowed. It's not a tolling. It really isn't 44 years. It really is until 2004. The bottom line is Congress could have written a different statute. I think then if you go to 6082A5D that provision would be written differently if that's the way they conceptualized. The provision about authorization would have been written differently. It doesn't make sense. If somebody had the mining rights and the timber rights and somebody wants to harvest the  if the property interest and if that's true spatially there's no reason that's not the right answer. It would have been written differently in the way you described if Congress's aim was compensation. But if Congress's aim is to do what  Alito was trying to do I don't understand why the statute wouldn't be written exactly as it is. Giving anybody whose property was taken as certified by the FCC the ability to say however many years later nobody should be using my  property until I get compensation for it. First of all it all depends on what we mean by my property. Can you answer the extent to which what we expect to see in the statute,  You keep saying Congress would have written it a different way but I'm saying Congress would have written it the way you're talking about if they were trying to compensate people. But you're not saying it has to be compensation right? I mean there were 44 more years left in which these kinds of suits could have been brought and that doesn't have anything to do with compensation. You're saying tie it to the nature of the property interest and at some point a temporal property interest runs out and you don't have it anymore. That's exactly right and what Congress clearly wrote the statute is they put not everybody but they put a very specific person in this unusual role as the substitute payer for a just compensation for the Cuban government and it's the person who traffics in the property interest that was confiscated. In this case even one of the respondents there's an argument that they went there before 2004. This is not an argument that nobody gets compensation for this interest. If you have amazing sugar that can still be used in 2027, that's something you can traffic in that which was confiscated. The single largest element of all of these claims when I looked at them are these forgiven debts or repudiated debts or destroyed accounts receivable because they expropriated the other U.S. company. I don't see how  traffics in any of those. So Congress wasn't trying to pass a statute that says we don't want anybody to go anywhere near Cuba and we want to provide a trafficking remedy for everybody who has a claim against Cuba. It's a more limited statute.  who was there before gets a grace period. There's a two-year statute of  so if nobody sues you within two years of  there's an amount of controversy required. Why doesn't that go to deterrence? The last thing the S.G. said was it's not remedial. The point of it is to make this scheme be so that cruise lines in the future will not use property that has been confiscated by the Cuban government in this way. One is everything I said about the statute not being maximally punitive means it's not maximally deterrent. It's a balanced statute. There are provisions in there.  it was compromised. The other thing is this is a statute about compensation. What makes what Cuba did unlawful is not that they took U.S. nationals property. It's that they did it without providing just compensation. The whole theory of this statute is I don't know if we're ever going to get just compensation from Cuba but if we can get substitute payers that traffic in the confiscated property that's good enough. I'm  not going     specifics of  statute. It boils down to those words in the property definition. Can you walk us through and summarize your position? For me it's most helpful to start with 682A1A that says any person that traffics in property which was confiscated. To define term in the statute I'm going to go to the definition of property in the  which is in sub 12. Then it says the term property means any property. To me what makes this easy is that it says including any lease hold interest. I know that the concession is not exactly a lease hold interest. It's at least like a lease hold. Then I pop back to 682A1A and I say who has the cause of  here? It's a U.S. national who owns the claim. Not a claim. I know you don't always get too excited about definite versus indefinite articles. It says the claim. Here is the killer. Such property has to refer back to the property that was confiscated. That's the property that was confiscated. That includes the lease hold. When the lease hold is over, you're not going to be in a position to find someone who trafficked in that which was confiscated. That's all I got. Thank you. Mr. Clear? Just a couple of points. First, the claim. It doesn't stand in     use the claim rather than a claim because that can be contested. If you look at A5D, if you don't have a certified claim, you still need to show that there is ownership to it. If someone else has a certified claim that is covering the same interests that you don't have the  Congress had to use the claim there. But in A3, it talks about liability arising from someone who trafficked and liability is in relation to anyone who holds a claim. Same with A4. It talks about bringing in action on a claim. Second, the cruise line association was asked as it appeared that suspension may be lifted for the private right of action, do we have exposure here? The answer wasn't, oh, no, there may be some litigation risk, but 2005 on, you're fine. It was, oh, my gosh, you have a legal  to keep the private right of action suspended. They said, please, President Trump, don't implement the private right of  because we're liable for hundreds of millions of dollars. They knew exactly what had  We had the memo in the joint appendix. The 2005 issue didn't even feature at least prominently. A lot were mentioned. A third is I just want to tie the foreign policy interest to the scope of the remedy here. Kryptonite was a better example. This is designed by Congress to put property that had  off limits from trafficking. That's what fueled the communist regime. That's what was trying to be prohibited here in addition to giving incentive to make a remedy. I don't think that was expected. If you   If you    just a few time limited interests. It's leases. Almost all business leases over a 65 year period will have evaporated by now. It's life interests. Every day another interest holder dies, then that property is freed up for exploitation under the 11th amendment.  Thank you,  The case is submitted.